DEPT 93 Hon. Robert B. Broadbelt A7260

1   Aghavni V. Kasparian, SBN 204136
    Darrell M. Padgette, SBN 199382
2   **KP LAW**
    633 West Fifth Street, Suite 2800
3   Los Angeles, CA 90071
    (213) 223-2110 Tel.
4   (213) 986-3121 Fax
    Email: akasparian@kplitigators.com
5   Email: dpadgette@kplitigators.com

6   David R. Shoop, SBN 220576
7   **SHOOP|A PROFESSIONAL LAW CORPORATION**
    350 S. Beverly Drive, Suite 330
8   Beverly Hills, CA 90212
    (310) 277-1700 Tel.
9   (310) 277-8500 Fax
    Email: david.shoop@shooplaw.com

10  Attorneys for Plaintiff
11  **STEFANI KAMINSKI-ALBRIGHT**

**Electronically
FILED**
by Superior Court of California
County of Los Angeles on
06/9/17
Sherri R. Carter, Executive Officer/Clerk
By Melissa Yelverton, Deputy
Melissa Yelverton

12          **SUPERIOR COURT OF CALIFORNIA**

13              **COUNTY OF LOS ANGELES**

14

15  STEFANI KAMINSKI-ALBRIGHT, an    )   Case No.    **BC662989**
    Individual;                     )
16                                  )
                Plaintiff,          )   **COMPLAINT FOR:**
17                                  )
    vs.                             )
18                                  )   1)  **NEGLIGENCE**
                                    )   2)  **STRICT LIABILITY**
19  SUNBEAM PRODUCTS, INC., DBA     )   3)  **BREACH OF IMPLIED**
    JARDEN CONSUMER SOLUTIONS, a    )       **WARRANTY**
20  Corporation; TARGET CORPORATION, a )
    Corporation; SPANX, INC., a Corporation; )   **DEMAND FOR JURY TRIAL**
21  KOHL'S DEPARTMENT STORES, INC., a )
    Corporation; DOES 1-100, inclusive, )   [Amount demanded exceeds $25,000]
22                                  )   [Unlimited Civil Case]
                Defendants.         )
23                                  )
                                    )
24                                  )

25

26      Plaintiff Stefani Kaminski-Albright (hereinafter, "PLAINTIFF" or "ALBRIGHT") brings

27  this action against Defendant Sunbeam Products, Inc. dba Jarden Consumer Solutions, Target

28

- 1 -
Complaint

E-SCANNED

FSC:11/26/18 TRIAL: 12/10/18 OSC : 06/09/20

CASE #:BC662989 RECEIPT #: 1170609D5073 DATE PAID : 06/9/17 9:43 AM TOTAL : 435.00 TYPE : EFT

DEPT 93 Hon. Robert B. Broadbelt A7260

BC662989

1 Corporation, Spanx, Inc., Kohl's Department Stores, Inc., and DOES 1 through 100 (hereinafter

2 collectively, "DEFENDANTS"), and in support thereof, alleges as follows:

3 **THE PARTIES**

4 1. At all times herein mentioned, PLAINTIFF is and was a citizen of California and

5 resides in Los Angeles County, California.

6 2. At all times herein mentioned, Defendant Sunbeam Products, Inc. dba Jarden

7 Consumer Solutions ("SUNBEAM") is and was a duly organized corporation incorporated in

8 Delaware and authorized to conduct and conducting business within the State of California.

9 3. At all times herein mentioned, Defendant Target Corporation ("TARGET") is and

10 was a duly organized corporation incorporated in Minnesota and authorized to conduct and

11 conducting business within the State of California.

12 4. At all times herein mentioned, Defendant SPANX, INC. ("SPANX") is and was a

13 duly organized corporation incorporated in Georgia and authorized to conduct and conducting

14 business within the State of California.

15 5. At all times herein mentioned, Defendant KOHL'S DEPARTMENT STORES, INC.

16 ("KOHL'S") is and was a duly organized corporation incorporated in Delaware and authorized to

17 conduct and conducting business within the State of California.

18 6. PLAINTIFF is ignorant of the true names, identities or capacities, whether

19 individual, associate, corporate, or otherwise, of defendants sued herein as DOES 1 through 100,

20 inclusive, and therefore sue these defendants by such fictitious names. PLAINTIFF will amend her

21 complaint to allege their true names, identities, or capacities when ascertained. PLAINTIFF is

22 informed and believe, and based thereon alleges, that each of the fictitiously-named defendants is

23 responsible in some manner for the occurrences herein alleged and that PLAINTIFF's damages as

24 herein alleged were legally and proximately caused by those defendants.

25 **JURISDICTION AND VENUE**

26 7. Jurisdiction is proper in this Court pursuant to California Code of Civil Procedure

27 Section 410.10 because Defendants do business in, purposefully avail themselves of, or otherwise

28 reside within the State of California.

- 2 -
Complaint

E-SCANNED

FSC:11/26/18 TRIAL: 12/10/18 OSC : 06/09/20

CASE #:BC662989 RECEIPT #: 1170609D5073 DATE PAID : 06/9/17 9:43 AM TOTAL : 435.00 TYPE : EFT

DEPT 93 Hon. Robert B. Broadbelt A7260

BC662989

8.    Venue is proper in this Court pursuant to California Code of Civil Procedure Section 395(a) because Plaintiff was injured in Los Angeles County and Defendants SUNBEAM TARGET, and KOHL'S are located in Los Angeles County.

## FACTUAL ALLEGATIONS

9.    On or about January 2, 2016, PLAINTIFF was using a SUNBEAM Heating Pad Featuring UltraHeat™ Technology (hereinafter, "HEATING PAD"), which was purchased from TARGET.  She had placed the HEATING PAD on her lower abdomen area while wearing a SPANX Assets® Red Hot Label™ Flipside Firmers Mid-Thigh garment ("GARMENT") purchased from KOHL'S.  When she removed the HEATING PAD, she had sever, permanent and disfiguring burns to her lower abdominal area as a result of the malfunction of the HEATING PAD and GARMENT.

## FIRST CAUSE OF ACTION

## NEGLIGENCE (BY PLAINTIFF ALBRIGHT AS AGAINST SUNBEAM, TARGET, SPANX, KOHL'S, AND DOES 1 THROUGH 100, INCLUSIVE)

10.    PLAINTIFF hereby incorporates by reference paragraphs 1 through 9 as if fully set forth herein.

11.    Defendant SUNBEAM, at all times herein mentioned, was and is a corporation engaged in the business of marketing, designing, manufacturing, assembling, testing, inspecting, promoting, distributing, fabricating, and selling heating pads and other consumer products throughout the United States and internationally, for the sale and use by members of the public and consumers such as PLAINTIFF.

12.    As part of its business, defendant SUNBEAM marketed, designed, manufactured, distributed, fabricated, tested, inspected, promoted, sold and otherwise placed into the stream of commerce the HEATING PAD.

13.    Defendant TARGET at all times herein mentioned, was and is a corporation engaged in the business of marketing, inspecting, promoting, and selling for SUNBEAM, and engaged in such marketing, promoting, inspecting, and sales business throughout the State of California, and specifically, did routinely, in its regular course and scope of business, market, promote, inspect, and

- 3 -
Complaint

FSC:11/26/18 TRIAL: 12/10/18 OSC : 06/09/20

E-SCANNED

CASE #:BC662989 RECEIPT #: 1170609D5073 DATE PAID : 06/9/17 9:43 AM TOTAL : 435.00 TYPE : EFT

DEPT 93 Hon. Robert B. Broadbelt A7260

BC662989

1    sell such above-referenced SUNBEAM products, to members of the general public and consumers

2    such as ALBRIGHT, including the HEATING PAD, and did otherwise place into the stream of

3    commerce, market, inspect, promote, and sell the HEATING PAD.

4         14.    Defendant SPANX, at all times herein mentioned, was and is a corporation engaged

5    in the business of marketing, designing, manufacturing, assembling, testing, inspecting, promoting,

6    distributing, fabricating, and selling garments and other consumer products throughout the United

7    States and internationally, for the sale and use by members of the public and consumers such as

8    PLAINTIFF.

9         15.    As part of its business, defendant SPANX marketed, designed, manufactured,

10   distributed, fabricated, tested, inspected, promoted, sold and otherwise placed into the stream of

11   commerce the GARMENT.

12        16.    Defendant KOHL'S at all times herein mentioned, was and is a corporation engaged

13   in the business of marketing, inspecting, promoting, and selling for SPANX, and engaged in such

14   marketing, promoting, inspecting, and sales business throughout the State of California, and

15   specifically, did routinely, in its regular course and scope of business, market, promote, inspect, and

16   sell such above-referenced SPANX products, to members of the general public and consumers such

17   as ALBRIGHT, including the GARMENT, and did otherwise place into the stream of commerce,

18   market, inspect, promote, and sell the GARMENT.

19        17.    Defendants, DOES 1-100, inclusive, are sued herein under fictitious names. Once

20   their true names and capacities are ascertained, PLAINTIFF will amend this Complaint by inserting

21   their true names and capacities herein. PLAINTIFF is informed and believes, and based thereon

22   alleges, that each of the fictitiously named defendants is responsible in some manner for the

23   occurrences herein alleged and that PLAINTIFF's damages as herein alleged were legally and

24   proximately caused by those defendants.

25        18.    At all times mentioned herein, DEFENDANTS negligently produced, manufactured,

26   assembled, designed, tested, distributed, inspected, promoted, marketed and sold the HEATING

27   PAD and/or GARMENT in a defective and dangerous condition, as described herein.

28        19.    On or about January 2, 2016, the HEATING PAD and/or GARMENT malfunctioned

- 4 -

Complaint

CASE #:BC662989 RECEIPT #: 1170609D5073 DATE PAID : 06/9/17 9:43 AM TOTAL : 435.00 TYPE : EFT

FSC:11/26/18 TRIAL: 12/10/18 OSC : 06/09/20

E-SCANNED

DEPT 93 Hon. Robert B. Broadbelt A7260

BC662989

1  and failed to perform properly as described hereinabove, causing substantial and severe injuries and

2  damages to PLAINTIFF.  DEFENDANTS, and each of them, breached their duty of care to

3  PLAINTIFF and the public by defectively designing, testing, inspecting, promoting, manufacturing,

4  and negligently failing to warn of these defects in the HEATING PAD and/or GARMENT, thereby

5  causing PLAINTIFF's damages.  DEFENDANTS failed to recall or retrofit, or replace the

6  previously manufactured, designed, and distributed HEATING PAD and/or GARMENT.

7      20.  DEFENDANTS were under a duty to exercise reasonable care in the HEATING

8  PAD and/or GARMENT's design so that it can be safely used as intended by its buyer/consumer.

9  At all times and places mentioned herein, DEFENDANTS owed a duty to PLAINTIFF to exercise

10 reasonable care in its design so that the HEATING PAD and/or GARMENT could be safely used

11 and operated as intended.  DEFENDANTS, and each of them, owed the general public and

12 PLAINTIFF a duty to produce, design, manufacture, assemble, test, inspect, promote, distribute,

13 sell, and otherwise place into the stream of commerce products that are safe in their intended and

14 foreseeable use, and free from defect.

15     21.  At all times mentioned herein, the HEATING PAD and/or GARMENT was sold

16 with knowledge that it would be purchased and used without inspection of defects.

17     22.  As a direct and proximate result of DEFENDANTS' negligence, PLAINTIFF

18 sustained extensive economic and non-economic damages, physical injuries, past and future

19 medical expenses, past and future and severe and ongoing emotional distress and pain and suffering,

20 and other such damages, all in an amount to be proven at trial.

21                 **SECOND CAUSE OF ACTION**

22     **STRICT LIABILITY (BY PLAINTIFF ALBRIGHT AS AGAINST DEFENDANTS**

23 **SUNBEAM, TARGET, SPANX, KOHL'S, AND DOES 1 THROUGH 100, INCLUSIVE)**

24     23.  PLAINTIFF hereby incorporates by reference paragraphs 1 through 22 as if fully set

25 forth herein.

26     24.  PLAINTIFF is informed and believes, and upon such information and belief alleges

27 that at all times mentioned herein, the HEATING PAD and/or GARMENT, and its related

28 components and/or materials, were defective and dangerous, in manufacture, design, sufficient

CASE #:BC662989 RECEIPT #: 1170609D5073 DATE PAID : 06/9/17 9:43 AM TOTAL : 435.00 TYPE : EFT

FSC:11/26/18 TRIAL: 12/10/18 OSC : 06/09/20

E-SCANNED

DEPT 93 Hon. Robert B. Broadbelt A7260

BC662989

1   instructions, and warnings, in that such defective components and/or materials of the HEATING
2   PAD and/or GARMENT were likely to cause, bring about and affect a failure of the HEATING
3   PAD and/or GARMENT, thereby rendering the subject HEATING PAD and/or GARMENT unsafe
4   for their intended use.

5        25.    Furthermore, PLAINTIFF is informed and believes, and upon such information and
6   belief alleges, that certain additional components and/or materials of the HEATING PAD and/or
7   GARMENT were defective in manufacture, design, sufficient instructions, and warnings, and the
8   HEATING PAD and/or GARMENT was neither appropriately nor adequately tested.

9        26.    PLAINTIFF is informed and believes, and upon such information and belief alleges
10  that, at the time of the incident complained of, the HEATING PAD and/or GARMENT were in
11  substantially the same condition as they were when they left possession of DEFENDANTS.

12       27.    At all times and places mentioned herein, DEFENDANTS, and each of them, knew
13  or should have known at the time said products left DEFENDANTS' possession, that said products
14  were defective in design, manufacture, sufficient instructions, and warnings, that they did not meet
15  users' and ordinary consumers' reasonable expectations for safety when used in a reasonably
16  foreseeable manner, and were dangerous, defective, unfit, and unsafe for their intended use and that
17  said conditions were likely to cause and bring about a failure and malfunction of the HEATING
18  PAD and/or GARMENT when used in a foreseeable manner, and not properly and adequately tested
19  or inspected.

20       28.    PLAINTIFF is informed and believes, and upon such information and belief alleges
21  that, the HEATING PAD and/or GARMENT had associated deficits, risks, and defects, including,
22  but not limited to, their defectively designed heating pad, defectively designed GARMENT, alleged
23  safety features, and/or their lack of sufficient warnings and/or use instructions.   Moreover,
24  DEFENDANTS failed to adhere to industry standards regarding the design, testing, and
25  manufacturing process, amongst others, and failed to incorporate in the HEATING PAD and/or
26  GARMENT's defective design, a properly functioning mechanism which could have averted
27  PLAINTIFF's injuries and damages.

28       29.    These deficits, risks, and defects were known or certainly knowable by

- 6 -
Complaint

CASE #:BC662989 RECEIPT #: 1170609D5073 DATE PAID : 06/9/17 9:43 AM TOTAL : 435.00 TYPE : EFT

FSC:11/26/18 TRIAL: 12/10/18 OSC : 06/09/20

E-SCANNED

DEPT 93 Hon. Robert B. Broadbelt A7260

BC662989

1  DEFENDANTS via the use and employ of scientific knowledge available at the time of design,

2  manufacture, testing, and distribution of the HEATING PAD and/or GARMENT.

3          30.     The associated risks, deficits, and defects of the HEATING PAD and/or GARMENT

4  presented a substantial danger to users of the products and ordinary consumers would not have

5  recognized the associated risks, deficits, and defects.

6          31.     DEFENDANTS, and each of them, further failed to adequately warn of the potential

7  risks and hazards associated with the HEATING PAD and/or GARMENT when used in a way that

8  was reasonably foreseeable to DEFENDANTS.  This lack of sufficient use instructions and/or

9  warnings was a substantial factor in causing the failure of the HEATING PAD and/or GARMENT

10 and, consequently, bringing about PLAINTIFF's damages.

11         32.     At the times and places mentioned herein, DEFENDANTS, and each of them, knew

12 or should have known at the time the HEATING PAD and/or GARMENT left DEFENDANTS'

13 possession, that said HEATING PAD and/or GARMENT were defective in their instructions,

14 warnings, design, and manufacture, likely to perform unsafely in a manner unanticipated by a

15 prudent user, and having such knowledge, DEFENDANTS, and each of them, should have used

16 reasonable care to warn, or give adequate use instructions and warning of the HEATING PAD

17 and/or GARMENT's defects and deficits in design and operational characteristics to those intending

18 to use the HEATING PAD and/or GARMENT in the manner in which they were intended to be

19 used.

20         33.     At all times and places mentioned herein, DEFENDANTS failed to use reasonable

21 care to warn, give adequate use instruction or warning to provide facts describing the HEATING

22 PAD and/or GARMENT's dangerous propensities to those whom they could expect to use the

23 product or be endangered by its probable use, and such deficits and defects as illustrated

24 hereinabove were a substantial factor in causing PLAINTIFF's damages.  The foreseeable risks of

25 failure associated with the design of the HEATING PAD and/or GARMENT outweigh the benefits

26 associated with the HEATING PAD and/or GARMENT.

27         34.     The HEATING PAD and/or GARMENT were further defective due to inadequate

28 warnings or use instruction because DEFENDANTS, and each of them, knew or should have known

- 7 -

Complaint

CASE #:BC662989 RECEIPT #: 117060905073 DATE PAID : 06/9/17 9:43 AM TOTAL : 435.00 TYPE : EFT

FSC:11/26/18 TRIAL: 12/10/18 OSC : 06/09/20

E-SCANNED

BC662989

1   that the defectively designed HEATING PAD and/or GARMENT created a high risk of failure and

2   resulting harm.  DEFENDANTS failed to adequately and timely warn consumers of the risk.

3       35.     On or about January 2, 2016, while the HEATING PAD and/or GARMENT were

4   being used in a reasonably foreseeable manner and for the purpose for which they were intended,

5   by reason of the defective conditions thereof, and as a legal and proximate result thereof, the

6   HEATING PAD and/or GARMENT failed to perform properly.

7       36.     As a proximate result of the defects referenced hereinabove, the failure to use

8   reasonable care to warn or give adequate use instructions and/or warning of the defective condition

9   and dangerous characteristics of the HEATING PAD and/or GARMENT when used in intended

10  manner, PLAINTIFF sustained extensive past and future economic and non-economic damages,

11  physical injuries, past and future medical expenses, past and future and severe and ongoing

12  emotional distress and pain and suffering, and other such damages, all in an amount to be proven at

13  trial.

14                    **THIRD CAUSE OF ACTION**

15       **BREACH OF IMPLIED WARRANTY (BY PLAINTIFF ALBRIGHT AS AGAINST**

16  **DEFENDANTS SUNBEAM, TARGET, SPANX, KOHL'S, AND DOES 1 THROUGH 100,**

17                              **INCLUSIVE)**

18      37.     PLAINTIFF hereby incorporates by reference paragraphs 1 through 36 as if fully set

19  forth herein.

20      38.     PLAINTIFF used the HEATING PAD and/or GARMENT manufactured by

21  SUNBEAM and SPANX, respectively.

22      39.     PLAINTIFF hereby alleges that the HEATING PAD and/or GARMENT were not

23  of the same quality as those generally acceptable in the trade, were not fit for the ordinary purposes

24  for which such products are used, were not adequately labeled as such and did not measure up to

25  the promises or facts stated in the sales literature and communications by and from DEFENDANTS.

26      40.     DEFENDANTS impliedly warranted that the HEATING PAD and/or GARMENT,

27  which DEFENDANTS designed, manufactured, assembled, promoted, and sold was merchantable,

28  fit and safe for ordinary use.

FSC:11/26/18 TRIAL: 12/10/18 OSC : 06/09/20

E-SCANNED

CASE #:BC662989 RECEIPT #: 1170609D5073 DATE PAID : 06/9/17 9:43 AM TOTAL : 435.00 TYPE : EFT

DEPT 93 Hon. Robert B. Broadbelt A7260

BC662989

41.    DEFENDANTS further impliedly warranted that the HEATING PAD and/or GARMENT which DEFENDANTS marketed, designed, manufactured, assembled, tested, inspected, promoted, distributed, fabricated, and sold were fit for the particular purposes for which they were intended and sold.

42.    Contrary to these implied warranties, the HEATING PAD and/or GARMENT were defective, unmerchantable, and unfit for their ordinary use when sold, and unfit for the particular purpose for which they were sold.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF respectfully requests this Court to grant judgment in her favor and against DEFENDANTS as follows:

1.    Granting PLAINTIFF judgment against DEFENDANTS for general, special, compensatory, consequential and/or incidental damages to be proven at trial;

2.    Granting PLAINTIFF pre-judgment and post-judgment interest on all amounts due;

3.    Granting PLAINTIFF the costs of this action; and

4.    Granting such other legal and equitable relief as the Court deems just and proper.

## JURY DEMAND

PLAINTIFF requests a trial by jury on all issues so triable.

DATED: June 9, 2017                    KP LAW

                                       By: _____
                                           Aghavni V. Kasparian
                                           Attorneys for Plaintiff
                                           **STEFANI KAMINSKI-ALBRIGHT**

- 9 -

Complaint

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL PERSONAL INJURY CASE

**Case Number BC662989**

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)).

| ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|
| Hon. Robert B. Broadbelt | Department 93 | 631 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on   06/9/17   SHERRI R. CARTER, Executive Officer/Clerk

By Admin Admin Deputy Clerk

LACIV  PI  190 (Rev. 09/15)
LASC Approved  05-06

### NOTICE OF CASE ASSIGNMENT

### UNLIMITED CIVIL CASE

FILED
LOS ANGELES SUPERIOR COURT

JAN 2 6 2015

SHERRIR.CART    ,EXECUTIVE OFFICER/ CLeRK

(J.BY C. CASAREZ,DEP.PUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

In re Personal Injury Cases Assigned to the ) Case No.: _____
Personal Injury Courts (Departments 91, 92, )
93, and 97), ) THIRD AMENDED GENERAL ORDER -
) FINAL STATUS CONFERENCE,
) PERSONAL INJURY ("PI") COURTS
) (Effective as of January 26, 2015)
)

The dates for Trial and Final Status Conference ("FSC") having been set in this matter, the Court

HEREBY AMENDS AND SUPERSEDES ITS April4, 2014 AMENDED GENERAL

ORDER - FINAL STATUS CONFERENCE AND GENERALLY ORDERS AS

FOLLOWS IN THIS AND ALL OTHER GENERAL JURISDICTION PERSONAL

INJURY ACTIONS:

1. PURPOSE OF THE FSC

The purpose of the FSC is to verify that the parties counsel are completely ready to

proceed with trial continuously and efficiently, from day to day, until verdict.   The PI Courts

will verify at the FSC that all parties counsel have (1) prepared the Exhibit binders and Trial

Document binders and (2) met and conferred in an effort to stipulate to ultimate facts, legal

issues, motions *in limine,* and the authentication and admissibility of exhibits.

1/26/1

E-SCANNED

## 2. TRIAL DOCUMENTS TO BE FILED

At least five calendar days prior to the Final Status Conference, the parties/counsel shall serve and file (in Room 102 of the Stanley Mosk Courthouse) the following Trial Readiness Documents:

### A.   TRIAL BRIEFS (OPTIONAL)

Each party/counsel may file, but is not required to file, a trial brief succinctly identifying:

    (1) the claims and defenses subject to litigation;

    (2) the major legal issues (with supporting points and authorities);

    (3) the relief claimed and calculation of damages sought; and

    (4) any other information that may assist the court at trial.

### B.   MOTIONS *IN LIMINE*

Before filing motions *in limine*, the parties counsel shall comply with the statutory notice provisions of Code of Civil Procedure ("C.C.P.") Section 1005 and the requirements of Los Angeles County Court Rule ("Local Rule") 3.57(a). The caption of each motion *in limine* shall concisely identify the evidence that the moving party seeks to preclude. Parties filing more than one motion *in limine* shall number them consecutively. Parties filing opposition and reply papers shall identify the corresponding motion number in the caption of their papers.

### C.   JOINT STATEMENT TO BE READ TO THE JURY

For jury trials, the parties counsel shall work together to prepare and file a joint written statement of the case for the court to read to the jury. Local Rule 3.25(i)(4).

1/26/1

E-SCANNED

**D.      JOINT WITNESS LIST**

The parties/counsel shall work together to prepare and file a joint list of all witnesses that each party intends to call (excluding impeachment and rebuttal witnesses).  Local Rule 3.25(i)(5). The joint witness list shall identify each witness by name, specify which witnesses are experts, and estimate the length of the direct, cross examination re-direct examination (if any) of each witness.  The parties/counsel shall identify and all potential witness scheduling issues and special requirements.  Any party/counsel who seeks to elicit testimony from a witness not identified on the witness list must first make a showing of good cause.

**E.      LIST OF PROPOSED JURY INSTRUCTIONS (JOINT AND CONTESTED)**

The parties/counsel shall jointly prepare and file a list of proposed jury instructions, organized in numerical order, specifying the instructions upon which all sides agree and the contested instructions, if any. The Joint List of Jury Instructions must include a space by each instruction for the judge to indicate whether the instruction was given.

**F.      JURY INSTRUCTIONS (JOINT AND CONTESTED)**

The parties/counsel shall prepare a complete set of full-text proposed jury instructions, editing all proposed California Civil Jury Instructions for Judges and Attorneys ("CACI") instructions to insert party names and eliminate blanks and irrelevant material. The parties shall prepare special instructions in a format ready for submission to the jury with the instruction number, title and text only (i.e., there should be no boxes or other indication on the printed instruction itself as to the requesting party.)

E-SCANNED

### G.   JOINT VERDICT FORM(S)

The parties/counsel shall prepare and jointly file a proposed general verdict form or special verdict form (with interrogatories) acceptable to all sides. If the parties/counsel cannot agree on a joint verdict form, each party must separately file a proposed verdict form. Local Rule 3.25(i)(7) and (8).

### H.   JOINT EXHIBIT LIST

The parties/counsel shall prepare and file a joint exhibit list organized with columns identifying each exhibit and specifying each party's evidentiary objections, if any, to admission of each exhibit. To comply with Local Rules 3.52(i)(5) and 3.53, the parties shall meet and confer in an effort to resolve objections to the admissibility of each exhibit.

### 3.   EVIDENTIARY EXHIBITS

The parties counsel shall jointly prepare (and be ready to temporarily lodge for inspection at the FSC), three sets of tabbed, internally paginated and properly-marked exhibits, organized numerically in three-ring binders (a set for the Court, the Judicial Assistant and the witnesses). The parties counsel shall mark all non-documentary exhibits and insert a simple written description of the exhibit behind the corresponding numerical tab in the exhibit binder.

### 4.   TRIAL BINDERS REQUIRED IN THE PI COURTS

The parties counsel shall jointly prepare (and be ready to temporarily lodge for inspection at the FSC) the Trial Documents, tabbed and organized into three-ring binders as follows:

Tab A: Trial Briefs

Tab B: Motions *in limine*

Tab C: Joint Statement to Be Read to the Jury

Tab D: Joint Witness List

1/26/1

Tab E: Joint List of Jury Instructions (identifying the agreed upon and contested instructions)

Tab F: Joint and Contested Jury Instructions

Tab G: Joint and/or Contested Verdict Forms

The parties shall organize motions *in limine* (tabbed in numerical order) behind tab B with the opposition papers and reply papers for each motion placed directly behind the moving papers. The parties shall organize proposed jury instructions behind tab F, with the agreed upon instructions first in order followed by the contested instructions (including special instructions) submitted by each side.

**5.   FAILURE TO COMPLY WITH FSC OBLIGATIONS**

The court has discretion to require any party/counsel who fails or refuses to comply with this General Order to Show Cause why the court should not impose monetary, evidentiary and/or issue sanctions (including the entry of a default or the striking of an answer).

1/26/1

**FILED**

LOS ANGELES SUPERIOR COURT

FEB 2 5 2016

SHERRI R. CARTER, EXECUTIVE OFFICER/ CLERK

BY C. CASAREZ, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| In re Personal Injury Cases Assigned to the Personal Injury Courts; (CENTRAL DISTRICT) | ) Case No.: ) ) SIXTH AMENDED GENERAL ) ORDER RE PERSONAL INJURY ) COURT ("PI Court") PROCEDURES, ) CENTRAL DISTRICT ) (Effective as of February 22, 2016) |

---

**DEPARTMENT:**      91      92      93      97      98

**FINAL STATUS CONFERENCE ("FSC"):**

- Date: _____ at 10:00 a.m.

**TRIAL:**

- Date: _____ at 8:30 a.m.

**OSC re DISMISSAL (Code Civ. Proc., § 583.210):**

- Date: _____ at 8:30 a.m.

---

TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY:

Pursuant to the California Code of Civil Procedure ("C.C.P."), the California

Rules of Court, and the Los Angeles County Court Rules ("Local Rules"), the Los

Angeles Superior Court ("LASC" or "Court") HEREBY AMENDS AND SUPERSEDES

THE September 18, 2015 AMENDED GENERAL ORDER AND GENERALLY

**ORDERS AS FOLLOWS IN THIS AND ALL OTHER GENERAL JURISDICTION**
**PERSONAL INJURY ACTIONS:**

Effective March 18, 2013, the Court responded to systemic budget reductions by centralizing the management of more than 18,000 general jurisdiction personal injury cases in the Stanley Mosk Courthouse.  LASC initially opened three Personal Injury Courts ("PI Courts" - Departments 91, 92 and 93), on January 6, 2014, a fourth (Department 97), and on September 28, 2015 a fifth (Department 98) to adjudicate all pretrial matters for these cases. It also established a Master Calendar Court (Department One), to manage the assignment of trials to dedicated Trial Courts located countywide.  Prior Amended General Orders laid out the basic procedures for the PI Courts' management of pretrial matters.  The parties will find additional information about the PI Courts on the court's website, *www.lacourt.org.*

1.      To ensure proper assignment to a PI Court, Plaintiff(s) must carefully fill out the Civil Case Cover Sheet Addendum (form LACIV 109).  The Court defines "personal injury" as:

"an unlimited civil case described on the Civil Case Cover Sheet Addendum and Statement of Location (LACIV 109) as Motor Vehicle-Personal Injury/Property Damage/Wrongful Death; Personal Injury/Property Damage/Wrongful Death-Uninsured Motorist; Product Liability (other than asbestos or toxic/environmental); Medical Malpractice-Physicians & Surgeons; Other Professional Health Care Malpractice; Premises Liability; Intentional Bodily Injury/Property Damage/Wrongful Death; or Other Personal Injury/Property Damage/Wrongful Death. An action for intentional infliction of emotional distress, defamation, civil rights/discrimination, or malpractice (other than medical malpractice), is not included in this definition. An action for injury to real property is not included in this definition."    Local Rule 2.3(a)(1)(A).

2

The Court will assign a case to the PI Courts if plaintiff(s) check any of the following boxes in the Civil Case Cover Sheet Addendum:

☐ A7100 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death

☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist

☐ A7260 Product Liability (not asbestos or toxic/environmental)

☐ A7210 Medical Malpractice – Physicians & Surgeons

☐ A7240 Medical Malpractice – Other Professional Health Care Malpractice

☐ A7250 Premises Liability (e.g., slip and fall)

☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism etc.)

☐ A7220 Other Personal Injury/Property Damage/Wrongful Death

The Court will not assign cases to the PI Courts if plaintiff(s) check any boxes elsewhere in the Civil Case Cover Sheet Addendum (any boxes on pages two and three of that form).

The Court sets the above dates in this action in the PI Court circled above (Department 91, 92, 93, 97, or 98) at the Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, CA 90012. Cal. Rules of Court, Rules 3.714(b)(3), 3.729.

**FILING OF DOCUMENTS**

2.      Parties may file documents in person at the filing window, via US Mail, or *as of March 1, 2106*, through e-Delivery, which is available online at www.lacourt.org (link on homepage). Please note that filings are no longer accepted via facsimile and must be filed either in person

3

Central District
2/22/2106

E-SCANNED

or via e-Delivery. Claims involving an attorney-client fee dispute, documents in which the filing party is a minor, legally incompetent person, or person for whom a conservator has been appointed, Requests to Waive Court Fees (FW-001) and Requests for Accommodations by Persons with Disabilities (MC-410), may not be filed via e-Delivery.

**SERVICE OF SUMMONS AND COMPLAINT**

3.     Plaintiff(s) shall serve the summons and complaint in this action upon defendant(s) as soon as possible but no later than <u>three years</u> from the date when the complaint is filed. C. C. P. § 583.210, subd. (a).  On the OSC re Dismissal date noted above, the PI Court will dismiss **the action and/or** all unserved parties unless the plaintiff(s) show cause why the action or the unserved parties should not be dismissed. C.C.P. §§ 583.250; 581, subd. (b)(4).

4.     The Court sets the above trial and FSC dates on condition that plaintiff(s) effectuate service on defendant(s) of the summons and complaint within six months of filing the complaint.

5.     The PI Court will dismiss the case without prejudice pursuant to C.C.P. § 581 when no party appears for trial.

**STIPULATIONS TO CONTINUE TRIAL**

6.     Provided that all parties agree (and there is no violation of the "five-year rule," C.C.P. § 583.310), the parties may advance or continue any trial date in the PI Courts without showing good cause or articulating any reason or justification for the change.  To continue or advance a trial date, the parties (or their counsel of record) should jointly execute and file (in Room 102 of the Stanley Mosk Courthouse; fee required) a Stipulation to Continue Trial,

FSC and Related Motion/Discovery Dates (form LACIV CTRL-242, available on the court's website, Personal Injury Court link).  The PI Courts schedule FSCs for 10:00 a.m., eight (8) court days before the trial date.  Parties seeking to continue the trial and FSC dates shall file the Stipulation at least eight court days before the FSC date.  Parties seeking to advance the trial and FSC dates shall file the Stipulation at least eight court days before the proposed advanced FSC date.  Code Civ. Proc., § 595.2;  Govt. Code § 70617, subd. (c)(2).  In selecting a new trial date, parties should avoid setting on any Monday, or the Tuesday following a court holiday.  Parties may submit a maximum of two stipulations to continue trial, the first for a maximum of four months, the second for a maximum of two months. A third request to continue trial will only be granted upon a showing of good cause, by ex parte application or noticed motion.  This rule is retroactive so that any previously granted stipulation to continue trial will count toward the maximum number of allowed continuances.

**NO CASE MANAGEMENT CONFERENCES**

7.     The PI Courts do not conduct Case Management Conferences.  The parties need not file a Case Management Statement.

**LAW AND MOTION**

**ANY DOCUMENTS WITH DECLARATIONS AND/OR EXHIBITS MUST BE TABBED.  CRC §3.1110(f)**

**ALL DEPOSITION EXCERPTS REFERENCED IN BRIEFS MUST BE MARKED ON THE TRANSCRIPTS ATTACHED AS EXHIBITS.  CRC §3.1116(c)**

*If your filing is not tabbed or depositions are not marked, do not file without the tabs or marked depositions unless today is the last day for filing.  If so, you must file a tabbed/marked copy with the clerk in the department where your motion will be heard within 2 court days.*

5

Central District
2/22/2106

E-SCANNED

**Chambers Copies Required**

8.      In addition to filing original motion papers in Room 102 of the Stanley Mosk Courthouse, the parties must deliver, directly to the PI Court courtrooms, an extra copy (marked "Chambers Copy") of reply briefs and all other motion papers filed less than seven (7) court days before a hearing calendared in the PI Courts.  The PI Courts also strongly encourage the parties filing and opposing lengthy motions, such as motions for summary judgment/adjudication, to submit one or more three-ring binders organizing the Chambers Copies behind tabs.

**Reservation of Hearing Date**

9.      Parties are directed to reserve hearing dates for motions in the PI Courts using the Court Reservation System (CRS) available online at *www.lacourt.org* (link on homepage).  After reserving a motion hearing date, the reservation requestor must submit the papers for filing with the reservation receipt (CRS) number printed on the face page of the document under the caption and attach the reservation receipt as the last page.  Parties or counsel who are unable to utilize the online CRS may reserve a motion hearing date by calling the PI Court courtroom, Monday through Friday, between 3:00 p.m. and 4:00 p.m.

**Withdrawal of Motion**

10.      California Rules of Court, Rule 3.1304(b) requires a moving party to notify the court immediately if a matter will not be heard on the scheduled date. In keeping with that rule, the PI Courts urge parties who amend pleadings in response to demurrers to file amended pleadings before the date when opposition to the demurrer is due so that the PI Courts do not

Central District
2/22/2106

1  needlessly prepare tentative rulings on demurrers.

2

3  **Discovery Motions**

4  11.     The purpose of an Informal Discovery Conference ("IDC") is to assist the parties to

5  resolve and/or narrow the scope of discovery disputes.   Lead trial counsel on each side, or

6  another attorney with full authority to make binding agreements, must attend in person.  The

7  PI judges have found that, in nearly every case, the parties amicably resolve disputes with the

8
9  assistance of the Court.

10  12.     Parties **must** participate in an IDC **before** a Motion to Compel Further Responses to

11  Discovery will be heard, unless, the moving party submits evidence, by way of declaration,

12  that the opposing party has failed or refused to participate in an IDC.   Scheduling or

13  participating in an IDC does not extend any deadlines imposed by the Code of Civil Procedure

14  for noticing and filing discovery motions.  Ideally, the parties should participate in an IDC

15  before a motion is filed because the IDC may avoid the necessity of a motion or reduce its

16
17  scope.  Because of that possibility, attorneys are encouraged to stipulate to extend the 45 (or

18  60) day deadline for filing a motion to compel further discovery responses in order to allow

19  time to participate in an IDC.  If parties do not stipulate to extend the deadlines, the moving

20  party may file the motion to avoid it being deemed untimely.   However, the IDC must take

21  place before the motion is heard so it is suggested that the moving party reserve a date for the

22  motion hearing that is at least 60 days after the date when the IDC reservation is made.  Motions

23  to Compel Further Discovery Responses are heard at 10:00 a.m.  If the IDC is not productive,

24
25  the moving party may advance the hearing on a Motion to Compel Further Discovery

26

27

7

Central District
2/22/2106

Responses on any available hearing date that complies with the notice requirements of the Code of Civil Procedure.

13.    Parties are directed to reserve IDC dates in the PI Courts using CRS available online at www.lacourt.org (link on homepage).  Parties are to meet and confer regarding the available dates in CRS prior to accessing the system.  After reserving the IDC date, the reservation requestor must file in the appropriate department and serve an Informal Discovery Conference Form for Personal Injury Courts, from LACIV 239 (revised 12/14 or later), at least 15 court days prior to the conference and attach the CRS reservation receipt as the last page.  The opposing party may file and serve a responsive IDC Form, briefly setting forth that party's response, at least 10 court days prior to the IDC.

14.    Time permitting; the PI Hub judges may be available to participate in IDCs to try to resolve other types of discovery disputes.

**Ex Parte Applications**

15.    Under the California Rules of Court, courts may only grant *ex parte* relief upon a showing, by admissible evidence, that the moving party will suffer "irreparable harm," "immediate danger," or where the moving party identifies "a statutory basis for granting relief ex parte." Cal. Rules of Court, Rule 3.1202(c). The PI Courts have no capacity to hear multiple *ex parte* applications or to shorten time to add hearings to their fully booked motion calendars. The PI Courts do not regard the Court's unavailability for timely motion hearings as an "immediate danger" or threat of "irreparable harm" justifying *ex parte* relief.  Instead of seeking *ex parte* relief, counsel should reserve the earliest available motion hearing date, and stipulate with all parties to continue the trial to a date thereafter using the Stipulation to Continue Trial, FSC and Related Motion/Discovery Dates (form LACIV CTRL-242, available

Central District
2/22/2106

on the court's website, PI Court Tab).  Counsel should also check the Court Reservation System from time to time because earlier hearing dates may become available as cases settle or counsel otherwise take hearings off calendar.

**REQUEST FOR TRANSFER TO INDEPENDENT CALENDAR DEPARTMENT**

16.     Parties seeking to transfer a case from a PI Court to an Independent Calendar ("I/C") Court shall file (in Room 102 of the Stanley Mosk Courthouse) and serve the Court's "Motion to Transfer Complicated Personal Injury Case to Independent Calendar Court" (form LACIV 238, available on the Court's website under the PI Courts link).   The PI Courts will transfer a matter to an I/C Court if the case is not a "Personal Injury" case as defined in the General Order re General Jurisdiction PI Cases, or if it is "complicated."  In determining whether a personal injury case is "complicated" the PI Courts will consider, among other things, the number of pretrial hearings or the complexity of issues presented.

17.     Parties opposing a motion to transfer have five court days to file (in Room 102) an Opposition (using the same LACIV 238 Motion to Transfer form).

18.     The PI Courts will not conduct a hearing on any Motion to Transfer to I/C Court. Although the parties may stipulate to transfer a case to an Independent Calendar Department, the PI Courts will make an independent determination whether to transfer the case or not.

**GENERAL ORDER – FINAL STATUS CONFERENCE**

19.     Parties shall comply with the requirements of the PI Courts' "Amended General Order – Final Status Conference," which shall be served with the summons and complaint.

**JURY FEES**

20.     Parties must pay jury fees no later than 365 calendar days after the filing of the initial complaint. (Code Civ. Proc., § 631, subds. (b) and (c))

Central District
2/22/2106

E-SCANNED

**JURY TRIALS**

21.     The PI Courts do not conduct jury trials.  On the trial date, a PI Court will transfer the case to the Master Calendar Court in Department One in the Stanley Mosk Courthouse. Department One assigns cases out for trial to dedicated Trial Courts.

**SANCTIONS**

21.     The Court has discretion to impose sanctions for any violation of this general order. (C.C.P. §§ 128.7, 187 and Gov. Code, § 68608, subd. (b))

Dated:  2/25/16

Kevin C. Brazile
Supervising Judge, Civil
Los Angeles Superior Court

10

Central District
2/22/2106

E-SCANNED